In the Matter of STATE COMMISSION OF CORRECTION, Appellant, v NASSAU COUNTY MEDICAL CENTER, Respondent.

Third Department, May 12, 1988

### APPEARANCES OF COUNSEL

*Robert Abrams,* Attorney-General *(John Q. Driscoll* of counsel), for appellant.

*Edward T. O'Brien (Robert O. Boyhan* of counsel), for respondent.

### OPINION OF THE COURT

WEISS, J.

This case emanates from the death of Bobby J. Patton while committed to the Nassau County Jail awaiting trial on a pending attempted murder charge. On December 5, 1986, Patton became ill and was transferred to respondent, where he was treated and held under guard until his death on March 10, 1987 due to, *inter alia,* kidney failure and AIDS-related complex. On March 12, 1987, John J. McNulty, Jr., a member of petitioner and chairman of petitioner's Medical Review Board (hereinafter MRB), served a subpoena duces tecum on respondent seeking Patton's medical records. When respondent balked, petitioner obtained an ex parte order from Supreme Court directing respondent to comply. Thereafter, Supreme Court granted respondent's motion to vacate the ex parte order and quash the subpoena duces tecum, reasoning that the MRB had exceeded its jurisdictional authority in attempting to subpoena respondent's records. This appeal by petitioner ensued.

▪ We reverse. The initial question before us is whether the subpoena duces tecum was issued pursuant to a valid grant of authority *(see,* CPLR 2302 [a]; *Matter of Pharmaceutical Socy. v Abrams,* 132 AD2d 129, 133). Petitioner is charged with, *inter alia,* overseeing and regulating the safety and health of inmates incarcerated in our State and local correctional facilities *(see,* NY Const, art XVII, § 5; Correction Law § 45 [3]). To fulfill this mandate, petitioner and each individual member is authorized to "issue and enforce a * * * subpoena duces tecum * * * pursuant to civil practice law and rules" (Correction Law § 46 [2]). There can be little dispute that McNulty, as

a member of petitioner and chairman of the MRB, was authorized to issue the challenged subpoena. The real question concerns the scope of that subpoena.

■ Significantly, the MRB is statutorily required to "[i]nvestigate and review the cause and circumstances surrounding the death of any inmate *of* a correctional facility" (Correction Law § 47 [1] [a] [emphasis supplied]) and to "[i]nvestigate and report to [petitioner] on the condition of systems for the delivery of medical care to inmates *of* correctional facilities" (Correction Law § 47 [1] [e] [emphasis supplied]). Respondent essentially reads the underscored preposition "of" to mean "in", so as to support its thesis that the MRB's investigatory powers are limited to the confines of an involved correctional facility. The statute, however, contains no such geographical limitation and it is not within our authority to impose such a restriction *(cf., Matter of Crowe v MacFarland,* 138 AD2d 788, 790, citing 56 NY Jur, Statutes, § 109, at 587 [1967]). The statutory language is clear and imparts an obligation on the MRB to investigate an inmate's death regardless of where that death occurred or by whom medical care was provided. Moreover, this construction is consistent with the avowed purpose of the MRB to improve the health care services provided throughout the State's correctional facilities *(see,* Governor's mem, 1975 McKinney's Session Laws of NY, at 1781; Pelgrin, Practice Commentary, McKinney's Cons Laws of NY, Book 10B, Correction Law § 47, at 65). It is simply not logical to presume that medical care will only be provided to inmates by an "in-house" medical facility at a correctional institution instead of an off-premises hospital.

In the final analysis, Patton's status as an inmate, and not his physical presence at respondent at the time of his death, triggered the MRB's statutory duty to investigate the cause and circumstances surrounding his passing. The affidavit of Michael Baden, a member of the MRB and a board-certified forensic pathologist, which was submitted in opposition to respondent's motion to quash, confirms that all the records pertaining to Patton's medical care must necessarily be examined in order to fulfill the MRB's investigatory responsibilities. Given the nature of Patton's illness, the propriety of this investigation is self-evident *(see, Matter of Doe v Coughlin,* 71 NY2d 48). Additionally, respondent does not raise any claim of physician-patient privilege *(see, Matter of Camperlengo v*

*Blum,* 56 NY2d 251, 255). Accordingly, the MRB was authorized to subpoena Patton's medical records from respondent.

MAHONEY, P. J., YESAWICH, JR., HARVEY and MERCURE, JJ., concur.

Order reversed, on the law, without costs, and motion denied.